Filed 3/28/24  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B317590 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA091413) |
| v. | |
| KENNETH RAY JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Kenneth Ray Johnson (defendant) was convicted of murder in 2014 when he and two others orchestrated a sham purchase of medical marijuana so they could rob the seller at gunpoint; they shot the seller and stole his drugs. In 2021, the trial court denied defendant's motion to vacate his conviction under Penal Code section 1172.6 (former section 1170.95)[1] after an evidentiary hearing at which the court found, beyond a reasonable doubt, that defendant was a major participant in the robbery who had acted with reckless indifference to human life. Substantial evidence supports these findings, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In early 2011, Philip Williamson (Williamson) was in the business of importing higher grade marijuana called "sour diesel" from northern California and reselling it to marijuana dispensaries in West Los Angeles. He ran the business out of his Westside apartment, and kept a gun. Just before March 24, 2011, Williamson had stowed in his apartment approximately 11

---

[1]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) For simplicity's sake, we will refer to the section by its new numbering only.

All further statutory references are to the Penal Code unless otherwise indicated.

pounds of sour diesel marijuana and somewhere between $100,000 and $375,000 or "even more than that" in cash.

Marcel Mackabee (Marcel)[2] knew Williamson and would sometimes smoke marijuana with him. Marcel decided to rob Williamson. Marcel enlisted the aid of Charles Mackbee (Mackbee), his cousin; Mackbee recruited defendant whom he referred to as his "right-hand man" because defendant was a "big, aggressive" guy. Mackbee later said they had agreed to "set [Williamson] up and [defendant] would be the shooter."

Defendant spent the night before the robbery getting himself "groomed up." He shaved his whole body; ironed his clothes; told his girlfriend he was preparing for a "big job interview"; and if everything went well, they would be financially "straight."

The robbery took place on March 24, 2011. Around noon that day, Marcel drove his 4-Runner to West Los Angeles: A video camera at a West Los Angeles 7-Eleven recorded Marcel buying Verizon calling cards at 12:27 p.m., and the receipt for that purchase was found in Williamson's apartment. Marcel's cell phone also "pinged" off of a cell tower near that 7-Eleven at the same time.

Later that evening, Marcel drove Williamson to the residential garage in Long Beach where defendant and his girlfriend lived at the time. Defendant and Mackbee met Marcel and Williamson inside the garage. Defendant posed as a businessman; he wore a suit and even brought a briefcase. The meeting in the garage ended when either defendant or Mackbee

---

[2]    We use his first name to avoid confusion, given the similarity of his last name to his cousin's. We mean no disrespect.

shot Williamson once in the head. It is unclear which of the two pulled the trigger. Defendant told his girlfriend and others that he had shot Williamson and was upset that Mackbee was taking credit for the shooting, while Mackbee told others *he* was the shooter.

Defendant, Mackbee and Marcel put Williamson in the back of the 4-Runner and dumped him in an alley in just his underwear, socks and a T-shirt. Williamson was still alive and was gasping for air when paramedics found him. Williamson died a few days later from the single gunshot wound to the head.

After dumping Williamson, defendant changed clothes and met up with his girlfriend. He told her that he had "messed up," that he "fucked up" and that "shit didn't go right as planned." As they spoke, defendant placed bags of clothing he had sliced up with scissors into different dumpsters. That same night, defendant visited another friend and looked as if he were about to cry. He showed the friend a revolver wrapped in a towel, which he then used to wipe down the gun. When police later searched Williamson's apartment, there were no signs of forced entry and the cash and marijuana were gone. Marcel told a friend he had $100,000 in his car, and police later seized $38,700 in cash from a car driven by Marcel's wife; neither defendant nor Mackbee knew anything about the additional cash and marijuana in Williamson's apartment.

In the days after the robbery, defendant asked his girlfriend to burn some of his clothes in a fire pit, and then told her she was an accessory to murder for doing so. Mackbee also burned a jumpsuit in the fire. The garage floor had a big stain that looked like "red paint," and the futon in the garage had blood spots. Defendant and Mackbee repeatedly scrubbed the garage

floor with chemicals, put bleach on rugs from the garage floor, and disposed of the futon. After the robbery, both defendant and Mackbee possessed sour diesel marijuana, including a big bag of it that they stored in the garage. Defendant started driving a black "benz," and Mackbee told a friend he was "sitting on about [$]20,000."

## II.    Prosecution, Conviction, and Appeal

In 2012, the People charged defendant and Mackbee with first degree murder (§ 187, subd. (a)).[3] The People also alleged the special circumstance that the murder had been committed the course of a robbery (§ 190.2, subd. (a)(17)) and alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The People further alleged that defendant had served one prior prison term (§ 667.5, subd. (b)) and that Mackbee had served four.

Following trial, the jury convicted defendant and Mackbee of first degree murder, and found the special circumstance and firearm allegations to be true. The court struck the prior prison term enhancements.

Due to the special circumstance finding, the trial court sentenced defendant to life without the possibility of parole on the murder count; to that, the court added an additional year for the firearm allegation.

On appeal in *People v. Johnson et al.* (Mar. 24, 2016, B256273), in a nonpublished opinion, this court concluded the trial court's special circumstances jury instruction omitted an element, concluded that omission was not harmless beyond a reasonable doubt, and vacated the special circumstance finding

---

[3]    Marcel was charged and tried separately. His conviction and sentence were affirmed on appeal. (See *People v. Mackabee*, June 20, 2014, B250143 [nonpub. opn.])

and the life without possibility of parole sentence based on that finding. We also concluded that the evidence at trial was sufficient to support a special circumstance finding, such that the People could retry defendant on the special circumstance. We remanded for the People to elect whether to retry the special circumstance or to have the trial court resentence without the special circumstance finding.

On remand, the People elected not to retry the special circumstance allegation. Consequently, the trial court resentenced defendant to 26 years to life, comprised of 25 years to life for the murder plus one additional year for the firearm enhancement.

### III. Petition to Vacate Under Section 1172.6

In January 2019, defendant filed a petition for resentencing under section 1172.6. After appointing counsel to represent defendant, and after receiving a response from the People, the trial court in March 2021 issued an order to show cause and set the matter for an evidentiary hearing. In April 2021, defendant filed a further brief in support of his petition.

On November 3, 2021, the trial court held an evidentiary hearing. At that hearing, the People introduced the transcripts from the original trial. Defendant introduced no new evidence, and did not testify.

On November 30, 2021, the trial court issued a three-page order denying defendant's petition. The court stated that although "there was substantial evidence that [defendant] was the actual shooter," "it ma[de] no difference" because the court independently found beyond a reasonable doubt that defendant was a "major participant who acted with reckless indifference to human life."

6

## IV. Appeal

Defendant filed a petition for a writ of mandate, which we construed as a notice of appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his petition to vacate his murder conviction and to resentence him under section 1172.6.

In 2018, our Legislature amended the definition of "murder" in our state to preclude a jury from "imput[ing]" the "malice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g).) As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e); e.g., *People v. Johns* (2020) 50 Cal.App.5th 46, 58-59.)

Section 1172.6 is the procedural vehicle by which persons convicted in now-final judgments can seek to vacate convictions that do not satisfy the now-current definition of "murder." Where, as here, a defendant files a facially sufficient petition and the record does not otherwise foreclose relief as a matter of law, the trial court must issue an order to show cause and convene an evidentiary hearing. (§ 1172.6, subd. (c).) At the hearing, the People have the burden of proving to the trial court, acting as an

7

independent factfinder, that a defendant is guilty of murder on a still-valid theory.  (§ 1172.6, subd. (d)(3).)

As pertinent here, the trial court found beyond a reasonable doubt that defendant was guilty under the still-valid theory that he was a major participant in the robbery that resulted in Williamson's death and that he acted with reckless indifference to human life.  Our task is to assess whether "substantial evidence"—that is evidence that is reasonable, credible, and of solid value—supports the *trial court's* independent finding that defendant acted with reckless indifference.  (*People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)  In so doing, we view the evidence in the light most favorable to the court's finding, drawing all reasonable inferences in support of that finding.  (*Ibid.*)

## I.     Pertinent Legal Principles

Because the propriety of the trial court's denial of defendant's section 1172.6 turns on whether substantial evidence supports its finding that defendant was a major participant in the robbery who acted with reckless indifference to the value of human life, further explication of those terms is helpful.

### A.     *Major participant*

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), our Supreme Court defined a "major participant" in a robbery as someone whose "personal involvement" is "substantial"; such a participant "need not be the ringleader," but his involvement must be "greater than the actions of an ordinary aider and abettor."  (*People v. Williams* (2015) 61 Cal.4th 1244, 1281; *Banks*, at pp. 801-802.)  Courts are to examine the totality of the circumstances when evaluating the extent of participation, including several factors our Supreme

8

Court identified in *Banks* as relevant but not dispositive on the issue: (1) the defendant's role in planning the robbery; (2) his role in supplying or using lethal weapons; (3) his awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his presence at the scene of the killing and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of lethal force. (*Banks*, at p. 803; *Clark*, at p. 611.)

### B. *Reckless indifference to human life*

In *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, our Supreme Court spelled out that a defendant acts with reckless indifference to human life when he ""knowingly engag[es] in criminal activities known to carry a grave risk of death."" (*Banks*, at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*, at p. 801.) The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, p. 617.) To satisfy the objective component, the risk of death ""must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a

9

gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation.'"'" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Ibid.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

## II. Analysis

Before examining whether substantial evidence supports the trial court's findings that defendant was a major participant in the robbery and that he acted with reckless indifference, we explain why several arguments defendant makes are irrelevant. He argues that there is no evidence that he was the actual shooter and no evidence that he acted with the intent to kill. This does not matter: As explained above, a murder conviction is valid if it relies on proof that the defendant was the actual killer,

that he acted with the intent to kill, *or* that he was a major participant in an underlying felony and acted with reckless indifference to human life; whether there is evidence of the first two is irrelevant to whether there is evidence of the third.[4] Defendant argues that the prosecutor at the original trial made arguments to the jury that were inconsistent with how the law changed four years later.  This also does not matter:  What matters is whether the trial court hearing defendant's section 1172.6 petition applied the law *as it exists today*, not whether the trial prosecutor accurately prognosticated what our Legislature might do years later.  Relief under section 1172.6 does not turn on clairvoyance.  Defendant argues that not all participants in a robbery automatically qualify as major participants acting with reckless indifference to the value of human life.  This also does not matter because, as discussed next, we evaluate whether the evidence shows something *more*—namely, that defendant acted as a major participant in *this* robbery and so acted with reckless indifference to human life.

### A.   *Major participant*

Substantial evidence supports the trial court's finding that defendant was a major participant in the robbery of Williamson. Defendant, Mackbee and Marcel certainly had a plan:  Marcel induced Williamson to come with him to Long Beach, ostensibly on the promise of having a buyer lined up, and drove Williamson to defendant's garage; defendant posed as that buyer, going so far as to specially groom himself, put on a suit, and bring a briefcase; and defendant and Mackbee brought at least one gun to the

---

4      Defendant is also wrong that there is no evidence that he was the actual killer; defendant told others that he had shot Williamson.

11

garage to force Williamson to hand over the marijuana he brought with him. Defendant knew of the plan, commenting later that the robbery did not go "as *planned*." And defendant's role was integral to that robbery plan. Although there is no direct evidence that defendant was the sole planner, defendant's central role as the faux buyer supports a reasonable inference that defendant was at least *partially involved* in planning how the robbery would go down. The evidence also supports the inference that defendant may have been the shooter (and hence used lethal weapons), because defendant admitted as much to his girlfriend and also had a gun in his possession soon after the robbery. Mackbee also told others that the plan—in advance— was for defendant to be "the shooter." Although there was no evidence that defendant knew Mackbee had engaged in violence in the past, it is fair to infer that defendant knew of the "particular dangers" posed by bringing a gun into a small, enclosed garage in order to rob a drug dealer. Defendant was present in the garage when Williamson was shot, and hence in a position to stop the shooting. And after the use of lethal force, defendant and Mackbee worked together to strip Williamson out of his clothes and then transport and dump his body in an alleyway—all while Williamson was still breathing.

Defendant musters what boils down to three arguments in response.[5] First, and without any citation to the record,

---

[5] Defendant makes two other arguments, but they rest on a misreading of the record. In his opening brief, defendant argues that he was not present at the scene of the robbery and murder, but this is patently wrong—as defendant concedes in his reply brief. Defendant also argues that he did not participate in the "*kidnapping*," but the special circumstance in this case was based on a killing in the course of a robbery, not a kidnapping.

12

defendant argues that he had "little role" in planning the robbery and that Marcel was the "mastermind." Aside from having no basis in the record, this argument ignores defendant's key and critical role in the robbery itself, which required him to act in a certain way—and hence required some modicum of advanced planning. Second, defendant notes that there is no evidence in the record that he was aware of Mackbee's tendency to engage in violence. Defendant is correct, but the absence of this particular fact does not undermine the totality of evidence tending to show that defendant was a major participant in the robbery. Third and lastly, defendant argues that there is no evidence that his "inaction" in *not* helping Williamson while he stripped him and dumped his body in an alley played a role in Williamson's death. This argument seems to rest on a notion that this factor does not count against defendant unless his callousness had a causal link to Williamson's death. Defendant is wrong. This factor is relevant to the major participant analysis because his actions may continue to reflect his integral role in the robbery, and here it did. Defendant was actively involved in disposing of the robbery victim's body after the fact, and thus continued to play a vital role in the robbery.

### B. *Reckless indifference to human life*

Substantial evidence supports the trial court's finding that defendant knowingly engaged in criminal activities known to carry a grave risk of death by evincing a willingness to kill that entailed a gross deviation from the standard of conduct that a law-abiding person would observe, and hence acted with reckless indifference to human life.

---

Defendant's lack of involvement in any kidnapping is therefore irrelevant.

13

More generally, defendant and his cohorts engaged in conduct that carries with it a particularly high risk of violence because they chose to plan and lead a crime with a particularly high risk of violence—armed robbery of a drug dealer. (*In re McDowell* (2020) 55 Cal.App.5th 999, 1013.) Defendant also played a central and integral role in the robbery, invoking the maxim that "the greater the defendant's participation in the [underlying] felony . . . , the more likely he or she acted with reckless indifference to human life." (*People v. Garcia* (2020) 46 Cal.App.5th 123, 146-148.)

More specifically, the pertinent *Banks* and *Clark* factors confirm that defendant acted with reckless indifference to human life. Although there is no evidence that defendant had foreknowledge of Mackbee's propensity for violence or likelihood of using lethal force, and the record does not indicate how long Mackbee and defendant interacted with Williamson in the garage before shooting him, most of the other factors support the trial court's finding of reckless indifference. Defendant knew a gun would be used to rob Williamson; indeed, Mackbee later said that *the plan* was for defendant to "shoot" Williamson. Defendant was physically present at the scene of the robbery and was in a position to render aid to Williamson after he was shot. He did not; instead, he indifferently pulled off Williamson's clothes, stuffed him a car, and dumped his body in an alleyway—all as Williamson was still struggling to breathe. Although defendant argues that there is no evidence that defendant was close enough to Mackbee to prevent Mackbee from taking a sudden action to harm Williamson, we reject this argument: The robbery occurred in a garage, not a stadium; no one was more than a few steps and an arm's length away from anyone else. And defendant took no

14

effort to minimize the risk of violence during the felony. Instead, he helped his friend maneuver a drug deal into a small, enclosed space, while they were armed with a gun, in order to wrest drugs from their intended victim.

Defendant makes what boils down to three arguments in response. First, he argues that it is not enough to show that he knew Mackbee was planning to rob Williamson. This is true, but the evidence here shows much more than defendant's awareness that he was going to participate in a robbery. Second, defendant asserts that he "did not want anyone to get killed." Although defendant stated after the fact that he felt that he "messed up" and that "shit didn't go right as planned," that may evince killer's remorse rather than the contemporaneous absence of an intent to kill—particularly in light of Mackbee's statement that the plan all along was for defendant to shoot Williamson. Third and lastly, defendant seems to suggest that our prior appellate opinion forecloses a finding that defendant acted with reckless indifference. He is wrong. To be sure, we found that the instructional error on the special circumstance was not harmless beyond a reasonable doubt because the evidence as to whether defendant acted with reckless indifference cut both ways (and thus presented a "closer issue" for the jury to resolve than the question of whether defendant was a "major participant," on which the evidence was overwhelming). But we went on to find that the evidence cutting in the People's favor could support a finding that defendant acted with reckless indifference. Here, the trial court independently found the evidence cutting in favor of a finding of reckless indifference to be more persuasive. Our review for substantial evidence obligates us to accept the trial court's view of the evidence. Once we do, we agree with our prior

15

determination that this evidence—so viewed—is amply sufficient to support a finding that defendant acted with reckless indifference to the value of human life.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ